ESTATE OF CHRISTIAN G. RAPP, APPELLEE, V. CHARLES S. ELGUTTER, APPELLANT.

FILED DECEMBER 7, 1906. No. 14,535.

1. **Executors and Administrators:** CONTRACT FOR LEGAL SERVICES. Where a contract for legal services which is reasonable and beneficial to the estate has been entered into by an administrator or executor, such contract may be upheld and enforced by the court having charge of the administration of the estate.

2. **Attorney and Client:** CONTRACT: ESTOPPEL. An attorney at law who agrees with an executor or administrator to conduct certain legal business of the estate for a sum named is estopped to deny that such sum is a reasonable consideration for the services rendered pursuant to such agreement.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Charles S. Elgutter, pro se.*

*T. J. Mahoney, contra.*

OLDHAM, C..

On the 14th day of January, 1902, Christian G. Rapp
departed this life in Douglas county, Nebraska, leaving a
last will and testament, in which he nominated L. E. Rob-
erts as executor, and by the terms of the will provided that,
after the payment of his debts, the residue of his estate
should be devoted to the erection of a suitable monument
over the grave of his parents. When the will was offered
for probate by the proponent, a contest was filed against it,
and, pending the probate proceedings, Roberts was ap-
pointed and qualified as special administrator of the
estate. He thereupon employed the claimant in this cause
of action, Charles S. Elgutter, a practicing attorney at the
bar of Douglas county, to defend the contest of the will
and to perform other services for him as special ad-
ministrator of the estate. At the trial of the contest in
the county court, judgment was rendered in favor of the
proponent, and the will was admitted to probate. This
judgment was appealed from by the contestants, but the
appeal was dismissed on motion of the proponent in the
district court. After the will was finally admitted to
probate, Roberts qualified as executor and proceeded with
the administration of his trust. Mr. Elgutter filed his
claim in the county court for legal services rendered in
behalf of the special administrator and in the defense of
the contest of the will, all in the sum of $500. The exec-
utor contested this claim, alleging that, before rendering
any services in the contest of the will, Mr. Elgutter had
agreed to try the case for $50 in the county court and $50
additional compensation if the case was appealed to the
district court. It was agreed between the parties that
the extra services rendered for the special administrator
were of the reasonable value of $50, and, on a hearing of
the claim in the county court, judgment was rendered for
$150 in favor of the claimant. To reverse this judgment
the claimant appealed to the district court, where, on a
trial to the court and jury, a verdict was returned in

favor of the claimant for $150, the amount allowed by the county court. This verdict was set aside for numerous errors alleged in a motion for a new trial filed by the claimant, and a new trial granted. At the subsequent trial, a jury was waived by consent of the parties and the cause was submitted to the court, and judgment was again rendered in favor of the claimant for $150. To reverse this judgment the claimant has appealed to this court.

As before stated, the reasonable value of the extra services rendered for the special administrator was agreed upon, so that the only question at issue here is as to the allowance for services rendered in the will contest. The testimony of the executor tends to show that Mr. Elgutter agreed to defend the will for the specified sum of $50 in the county court, and $50 in the district court. His testimony is corroborated in this particular by the evidence of the clerk of the probate court, Mr. Sunblad, who was present when the contract was made. He also testified, however, that Mr. Elgutter said: "It didn't make much difference what arrangements they might make, that the court would fix the fee anyhow." Mr. Elgutter admitted that he may have named $50 in each of the courts as the probable fee, but that this was merely a matter of opinion, without knowledge of the full extent of 'the services to be rendered, and that what he intended to offer was to render the services for such sum as the court would find to be reasonable and just. We are satisfied, from an examination of the testimony, that the trial judge was fully justified in finding, as a matter of fact, that the conversation had at the time of the employment led the executor to believe that the sum intended to be charged for the services was $50 in each of the courts, and no more.

The claimant practically concedes that the evidence is sufficient to support the findings of fact in this branch of the case, but he contends that, because the contract with Roberts was not binding upon the estate, it could not and should not be held to have bound the claimant; and that, as the trial court in his special finding held that, aside

from the existence of the contract, the services rendered by the claimant were shown by the evidence to have been worth more than $100, this special finding is inconsistent with the general finding and judgment of the court. Many hair-splitting distinctions are indulged in by the claimant in attempting to determine the exact capacity in which Roberts was acting when he made the alleged contract for services in defending the will. It is contended that, although at that time he was acting as special administrator, Roberts was not executor, but simply proponent of the will, and that as administrator he had no interest in the outcome of the contest of the will and could not contract with reference to it. So far as the conclusion about to be reached is concerned, we do not care to enter into a discussion of these niceties. It is clear from the record that, in view of his nomination as executor of the will, Roberts qualified as special administrator and offered the will for probate, and, when the will was finally admitted to probate, he qualified as executor. So that, in any event, he acted in a trust relation toward the effects of the estate when the contract was made. And, while it is true that he was not authorized in his trust relations to bind the estate by an unreasonable contract for legal services, it is equally true that in any one of them he was entitled to a just and reasonable compensation for legal services procured for the benefit of the estate. So that the question of the legality or illegality of the contract at issue depended upon its being reasonable and beneficial to the estate. *McCoy v. Lane*, 66 Neb. 847. The fact that an executor or administrator cannot bind the assets of his estate for the payment of an exorbitant or unreasonable fee for legal services does not prevent an attorney at law from binding himself in a reasonable and beneficial contract for services to be rendered in behalf of such executor or administrator. And we think that, in sound reasoning and good morals, an attorney who has induced an administrator, executor, or guardian to employ him to represent the interests of an estate by the use of language that would

reasonably lead such executor, administrator or guardian to believe that such services would not exceed a sum named is, and should be, estopped from demanding of the estate a greater sum than that suggested as an inducement to his employment.

There is a further contention in the brief of the claimant that, because a motion for a new trial was granted after the first trial of the cause in the district court, and because one of the grounds of the motion was the refusal of an instruction practically directing a verdict for the plaintiff for the reasonable value of the services rendered as shown by the testimony, the action of the trial judge sustaining this motion was binding as the law of the case on the judge who subsequently tried the cause. This contention is wholly unavailing in any view of the case, and especially in view of the fact that numerous reasons were alleged in the motion for a new trial, and there is nothing in the judgment granting it which shows the reason of the judge for doing so.

Finding no reversible error in the record, we recommend that the judgment of the district court be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.